NATIONWIDE MUT. INS. CO., APPELLANT, *v.* DeJANE, APPELLEE.

(No. 74 C. A. 7—Decided September 18, 1974.)

*Mr. Thomas L. Corroto,* for appellant.
*Messrs. Pfau, Comstock & Springer,* for appellee.

I.

DONOFRIO, J. This is an appeal on questions of law by Nationwide Mutual Insurance Company, plaintiff, the appellant herein, from a judgment of the trial court entering final judgment in favor of Twin D. DeJane, defendant, the appellee herein. The case was presented to the trial court on an agreed statement of facts and a supplemental agreed statement of facts which are part of the record.

On October 3, 1970, the plaintiff had in full force and effect a policy of insurance issued to Leslie E. Metts covering a certain 1969 Chevrolet automobile, which policy provided, among other things, to pay all reasonable expenses incurred within one year following an accident for necessary medical, dental, surgical, ambulance and hospital for any person who, by accident, suffered bodily injury

while in, or upon entering or alighting from the insured vehicle.

On October 3, 1970, Leslie E. Metts was driving the above described insured vehicle eastwardly on Pine Lake Road, in Mahoning County, with his wife, Ruth M. Metts, as a passenger when such vehicle was struck from the rear by an automobile operated by the defendant.

As a result of the collision, both Leslie E. Metts and Ruth M. Metts sustained personal injuries which required medical attention. Under the provisions of the insurance agreement set forth above, the plaintiff paid to its insured the medical expenses incurred within one year following the accident, which amounted to $2,162.02.

The aforementioned insurance policy provides, in essence, that in the event payments are made under the clause set forth in paragraph one above, the plaintiff shall become subrogated to all of the rights of its insured against the tortfeasor. Under letters dated December 4, 1970, and January 26, 1971, the plaintiff advised the defendant's insurance carrier of its payments and its claim to subrogation. No payment of this claim has been made to the plaintiff, either by the defendant or his carrier.

A lawsuit was not filed by the plaintiff's insureds. However, on January 26, 1971, the plaintiff's insureds, Leslie E. and Ruth M. Metts, signed a full and final release for the amount of $5,500. The $5,500 was paid to Leslie E. and Ruth M. Metts by the Grange Mutual Casualty Company, the insurer of the defendant.

## II.

The issue presented for review is as follows:

Can medical payments under an automobile insurance policy be subrogated to the insurer by the policy holder or those receiving payment?

## III.

The lower court held that plaintiff, in trying to obtain subrogated medical expenses, was attempting to recover for expenses that were part of the original personal injury action of their insured and was, therefore, separating a single cause of action. The court stated that "a claim for relief arising out of a single tortious act cannot be sep-

arated.'' The lower court did not permit the plaintiff to recover, ordered the action to be dismissed on the merits and, in effect, rendered a judgment for the defendant.

For a proper resolution of the issue presented, a review of the law of Ohio that permits the subrogation of a claim for *property* damage by an insured to his insurer will be helpful, because if the judgment of the lower court is to be affirmed, a distinction must be made as to the subrogation of property damage claims and claims arising from the subrogation of medical expenses.

In 1945, our Ohio Supreme Court, in the case of *Vasu* v. *Kohlers, Inc.*, 145 Ohio St. 321, ruled that a verdict for the defendant in an action by a subrogated insurance company which had obtained a claim for property damage was not a bar to an action by the assignor-insured for personal injuries. The court in the sixth paragraph of the syllabus stated:

''Where an injury to person and to property through a single wrongful act causes a prior contract of indemnity and subrogation as to the injury to property, to come into operation for the benefit of the person injured, the indemnitor may prosecute a separate action against the party causing such injury for reimbursement for indemnity monies paid under such contract.''

In the same case, the court enunciated, in the fourth paragraph of the syllabus, a doctrine which it later had to repudiate. It states, in part:

''Injuries to both person and property suffered by the same person as a result of the same wrongful act are infringements of different rights and give rise to distinct causes of action * * *.''

In the case of *Rush* v. *City of Maple Heights*, 167 Ohio St. 221, the court overruled the fourth paragraph of the syllabus in the *Vasu* case, by ruling, in the syllabus, as follows:

''Where a person suffers both personal injuries and property damage as a result of the same wrongful act, only a single cause of action arises, the different injuries occasioned thereby being separate items of damage from such act (Paragraph four of the syllabus in the case of

*Vasu* v. *Kohlers, Inc.,* 145 Ohio St., 321, overruled).''

Our Ohio Supreme Court thus reasons that injuries and property damage as a result of the same wrongful act creates only a single cause of action; the personal injuries and the property damage being separate items of damage from such act. With the advent of *Rush* v. *Maple Heights,* various problems arose for litigation such as bringing an action based on the subrogation of the property damage claim without an action for personal injuries being filed, or where both personal injury action and property subrogation actions were filed, joinder could be had at the insistence of the defendant tortfeasor to settle all of the claims in one action and such matters as waiver of this right and estoppel to joinder were adjudicated. *Hoosier Casualty Co.* v. *Davis,* 172 Ohio St. 5, *Shaw* v. *Chell,* 176 Ohio St. 375, and *Nationwide Ins. Co.* v. *Steigerwalt,* 21 Ohio St. 2d 87, all deal with the problem of property damage subrogation claims and their attending legal questions because of separate parties, separate filings of actions, requirement for joinder and waiver of the right to assert the doctrine of estoppel to prevent relitigation of issues previously determined. We find no Ohio Supreme Court decisions, nor are any brought to our attention, relative to subrogation of medical expenses as in the instant case.

### IV.

A review of the law of Ohio relative to subrogation rights of the insurer under a *medical payments* provision of an automobile insurance policy indicates that there is a municipal court case, a common pleas court case, and a court of appeals case generally approving of this type of subrogation and subsequent prosecution of an action.

The first is *Travelers Ins. Co.* v. *Lutz,* 3 Ohio Misc. 144, an Akron Municipal Court case. The court therein ruled that medical payments could be a matter of subrogation as well as property damage. In that case, the wife of the insured received the medical payments. The husband was liable for his wife's medical expenses, and would have a separate cause of action against the tortfeasor for such expenses. The court discusses a series of cases dealing with the subrogation of *property* damage and seems to use these

holdings for authority to permit subrogation of *medical payments*. The Lutz case came to the conclusion that some clarification of the entire matter by the legislature would be helpful, but until such legislation takes place, there is no rule against medical subrogation payments.

In the common pleas court case of *Travelers Indemnity Co.* v. *Godfrey*, 12 Ohio Misc. 143, the court stated that a parent's claim for medical expenses which he has an obligation to pay for his minor child as a result of the wrongful act of another constitutes a separate cause of action, and such claim may be assigned to an insurance company which has paid such expenses under the medical payment provision of a policy of insurance on a motor vehicle. The judge in this case uses the municipal court case of *Travelers Ins Co.* v. *Lutz* as authority, although the facts therein did not involve a splitting of a cause of action since it dealt with a minor's medical expenses which gave the father a separate cause of action.

The Court of Appeals case is *Hartford Accident Co.* v. *Elliott* (1972), 32 Ohio App. 2d 281. In this case, the court's ruling did not make any distinction between the subrogation of a claim for property damage and one for medical expenses; the court held that the insurance company can be subrogated to either or both claims if the insurance policy so provides.

## V.

We come now to the question that will resolve the issue presented in the instant case, and that is:

Is there a distinction between subrogation of property damage claims and those for medical expense payments by the insurer?

We hold that there is a distinction, not only in form, but also in substance. Whereas our Ohio Supreme Court cases have indicated that property damage is a separate item of a single cause of action from a tortious injury, we do not feel that medical expenses are a separate item of damages from a personal injury claim. Medical expenses are an integral part of an injured party's claim for personal injuries along with such items as pain and suffering, lost wages, or other expenses incurred because of his per-

sonal injury. 16 Ohio Jurisprudence 2d (Rev.) 134, Damages, Section 113, states:

"* * * one who suffers personal injury from the wrong of another should be satisfied for all the damages that he has suffered in the loss of his business, his health, his time, and for the amount of his expenses. * * *"

If it would be permitted to split and separate the item of medical expenses from a personal injury claim, then would it not follow that it would be permissible to split further from that separate item of personal injury, lost wages, or sick pay received from an employer? In addition, to further complicate matters, a person's hospitalization coverage, held through carriers such as "Blue Cross" or "Blue Shield" or similar hospital service organizations, could be subrogated to the certificate holders' claims against a tortfeasor. Further, can an insured party split his claim for personal injury by subrogating to his disability insurance carrier a part or the total claim against the tortfeasor? How contradictory will the law of Ohio then be? The time honored concept is that one cannot split a cause of action.

Property damage may be a distinct and separate item, arising from a claim in tort, but a medical expense payment is not such a distinct and separate item, for it is a part of the subtotal along with other items that make up the distinct and separate item of a personal injury claim.

Putting subrogation conditions in their policies applicable to medical payment coverage by automobile insurers is of relatively recent origin. There is no indication from our legislature relative to the permissibility of this subrogation. The formulating of public policy is a function of the legislature. If we would give judicial approval of this type of subrogation, this court would be legislating public policy. In addition, all automobile insurers would, in due course, similarly condition their policies, and if automobile insurers were to insist on subrogation as to medical payment coverage, others affording coverage against all or some of the same expenses logically would be justified in insisting upon subrogation and reasonably might be

expected so to condition their coverage. Such multiple subrogation claims would inevitably lead to conflicts and disputes between the subrogation claimants that would complicate and make more difficult the negotiation of voluntary settlements with third party tortfeasors and would encourage and promote suits and interpleaders, all running counter to the policy of the law. We are aware that making a distinction to permit the subrogation of property damage is proper, but even that situation in law under certain facts may permit an illogical result. See *Nationwide Ins. Co. v. Steigarwalt*, 21 Ohio St. 2d 87, at page 93. The court in that case affirmed the legal principle of the subrogation of a property damage claim, but also stated:

"A review of the Ohio authorities cited herein, and those in other states, attests the troublesome experience courts have had with litigation resulting from one occurrence which involves multiple parties, causes of action, and lawsuits. We are aware that the result reached in this case could possibly result in recovery for an assignee where the assignor has failed. Although such a result lacks logic, there is merit in preserving the orderly nature of the practice in this state. In view of the former decisions of this court and the facts of this case, we believe that this result is justified."

We feel that by not permitting subrogation of medical expenses we are preserving the orderly nature of practice in this state by following the rule that one cannot split a cause of action, avoid multiplicity of suits and benefit the insured public and the public at large. There are no greater considerations of public policy which would justify us to carve out an exception in sound legal principle for the purpose of enabling the plaintiff to become subrogated as to medical payments coverage and thereby create enumerable practical and legal problems. *Travelers Indemnity Co. v. Chumbley* (1965 Mo. App.), 394 S. W. 2d 418; *Harleysville Mutual Ins. Co. v. Lea*, 2 Ariz. App. 538, 410 P. 2d 495; *Peller v. Liberty Mut. Fire Ins. Co.* (1963), 220 Cal. App. 2d 610, 34 Cal. Reptr. 41; *Forshtove v. Hardware Dealers Mut. Fire Ins. Co.* (1967, Mo. App.), 416 S. W. 2d 208, follow the reasoning that medical payments should not be

subrogated as a separate item of damage or as a separate cause of action. There are other courts in sister states that on the other hand do permit such separating and subrogation and assignment. See annotation 19 A. L. R. 3d 1054 and pages following for a discussion of this position.

VI.

Because of the foregoing reasoning, we hold that the lower court did not err in its ruling in favor of defendant, and we, therefore, overrule plaintiff's first and third assignments of error.

Plaintiff's second assignment of error states:

"The court committed error in finding that neither Metts or Nationwide filed timely litigation and as such would be barred by the statute of limitations."

We find that the trial court's reference to the statute of limitations in its opinion was only incidental to his basic finding that the insured, Metts, by assigning part or all of his claim for medical expenses to his insurer was in fact splitting a claim for relief for personal injury. We, therefore, overrule plaintiff's second assignment of error.

In the lower court's opinion, it is stated:

"Nationwide may have an action on breach of contract against Metts, but it does not have an action against this defendant growing out of the splitting of Metts' cause of action."

In this regard, in the event the plaintiff makes a claim for restitution against its insured Metts under a theory of breach of contract, we hold, since the transaction on which the claim for restitution is based is not permitted by law, the insurance company is not entitled to restitution, and the insured would be entitled to his medical expenses under his policy from his insurer. For the foregoing reasons, the judgment of the lower court is affirmed.

*Judgment affirmed.*

Lynch, P. J., and O'Neill, J., concur.