OPINION
Defendant-Appellant Barton Wilson appeals the trial court's judgment ordering him to pay Plaintiffs-Appellees Dwight and Dennis Holloway the sum of $6,994.98 plus interest, which sum was determined by the court to be the amount in default on a land contract between the parties. For the following reasons, we agree with Wilson, and reverse the judgment of the trial court.
The land contract at issue was originally entered into by the Holloways' partnership, HH Auto, the vendor, and Dome, Inc., the vendee. On January 22, 1995, Dome assigned its right, title, and interest in the land contract to Wilson; the Holloways consented to the assignment and their signatures appear on the assignment document. The assignment agreement does not contain any language showing Wilson assumed Dome's obligation to make the monthly installment payments on the land contract, but practically speaking, Wilson was aware that if he failed to make the payments he would be placing his interest in the land at risk. The land contract provided, in pertinent part, as follows:
 INTEREST ON UNPAID BALANCE — the interest rate shall be calculated at Ten percent (10.0%) on the unpaid balance. In the event any monthly payments set forth in paragraph five (5) hereunder are more than Sixty (60) days delinquent, the interest rate shall escalate to Thirteen Percent (13%) per annum on the entire unpaid principal together with any unpaid interest which is due on said monthly installment.
 PAYMENT PROVISIONS — the vendee shall make monthly payments to the vendors of principal and interest, which monthly payments shall be made before the 1st of each month, with the first payment due on or before December 1, 1994, and continuing for a period of sixty (60) successive payments. Said monthly payments shall be $2,643.01 which includes both principal and interest, with the interest being paid first from said sum and the balance being used to reduce the outstanding principal. This payment is based upon a ten (10) year amortization. On or before December 1, 1999 all unpaid principal and interest shall be due. This 61st payment is a balloon payment.
* * *
 GRACE PERIOD — the vendee has a sixty (60) day grace period in which to make any payments provided herein except for the down payment. Any payment not made when due or within the sixty (60) day grace period immediately following, is a default in the contract and will permit the vendor to take such legal actions as may be available to him, including but not limited to foreclosure on the land contract.
Neither the contract nor the assignment agreement included an acceleration clause.
The dispute between the parties centers primarily on the payment that was due on July 1, 1996. That payment was placed in the mail on August 29, 1996, postmarked August 30, 1996, and received by the Holloways on September 3, 1996. The Holloways accepted the late payment without protest and then filed a complaint for foreclosure against Wilson and others not relevant to this appeal on September 11, 1996. Wilson continued to make the monthly installments on the land contract, and the Holloways continued to accept the payments until the Spring of 1998.
At trial, the Holloways claimed that even after their acceptance of the late July payment, additional interest had accrued due to the delinquency and that the accrued interest would have had to have been paid in addition to the monthly installment amount in order to cure the default. According to the Holloways, Wilson's failure to pay more than the monthly installment amount due for July meant that there remained a deficiency on the land contract equal to the amount of the accrued interest caused by the late payment. In addition, the principal amount owing on the land contract after the September 3 payment was $6,994.98 more than what an amortization schedule showed the balance should be on that date. In light of those facts and because the July 1 payment was allegedly made sixty-one days late and thereby put the contract into default, the Holloways claimed to be entitled to foreclosure.
Wilson testified that he had never agreed, in writing or orally, to assume responsibility for the monthly installments on the land contract. As such, the Holloways' lawsuit against him personally was improper as it sought from him something he had no legal obligation to pay. Wilson also claimed that any discrepancy between the principal balance shown on the amortization schedule and the actual principal balance of the account on any one date is irrelevant for purposes of determining whether the account was in default because the amortization schedule was never incorporated into the land contract or the assignment agreement. Moreover, Wilson argued that the Holloways were not the real parties in interest since the lawsuit had been filed by them in their personal capacities, and the land contract and assignment agreement had been signed by them in their capacities as partners in HH Auto Parts. Wilson also contended that as soon as the Holloways accepted the payment on September 3, any default was cured thus depriving the Holloways of the right to pursue foreclosure.
On August 13, 1999, the trial court found as follows:
 * * * [T]he Plaintiffs['] continued acceptance of payments from the Defendant has resulted in a waiver of Plaintiffs['] right to foreclose.
 Regarding the amount of money owed to the Plaintiff, the Defendant owes the amount due and owing under the terms of the contract. On September 3, 1996, there was a delinquent balance of $6,994.98. Since that date, the Defendant has paid the contracted monthly installment of $2,643.01. The contract does not contain an acceleration clause. Therefore, the Plaintiffs cannot demand the total balance due under the contract, but only the amount which is delinquent.
* * *
 Based on the foregoing, IT IS * * * ORDERED, that the Plaintiffs recover from the Defendant, Barton L. Wilson, the sum of $6,994.98 plus interest at the rate of 13 per cent per annum from September 3, 1996.
The parties are now before us on Wilson's timely appeal in which he asserts four assignments of error. The Holloways have also asserted a cross assignment of error relating to the trial court's determination that they had failed to bring forth sufficient evidence to warrant a judgment against Wilson for their expenses and fees incurred in pursuing the foreclosure. We will address Wilson's assigned errors in an order that facilitates our discussion. Because we sustain each of Wilson's four assignments of error, it is unnecessary for us to address the Holloways' cross assignment of error.
 Assignments of Error
Wilson's fourth assignment of error is presented as follows:
 The lower court erred in granting judgment to the Appellees who were not proper parties plaintiff in the action before the lower court.
In this assignment of error, Wilson argues that the Holloways, who initiated suit against him in their personal capacities, are not the real parties in interest because they were not signatories to the contract or the assignment agreement in that capacity. Instead, both documents were signed by the Holloways in their representative capacities as partners in HH Auto Parts. We agree.
As the Ohio Supreme Court has repeatedly stated, "[i]t is elementary that every action shall be prosecuted in the name of the real party in interest." Papiernik v. Papiernik (1989),45 Ohio St.3d 337, 344; State ex rel. Dallman v. Court of CommonPleas (1973), 35 Ohio St.2d 176, 179; Cleveland Paint Color Co.v. Bauer Manufacturing Co. (1951), 155 Ohio St. 17, paragraph one of the syllabus. "Additionally, in Ohio, it has been long settled that, `[a] party cannot, for his own benefit, insist upon the performance of a contract between others and to which he is not a party or privy; nor claim relief against either of the parties to such a contract * * *.'" Gueldenzoph v. Bridal Aisle Boutique
(June 14, 1991), Lucas App. No. L-90-301, unreported, quotingVought v. Columbus, Hocking Valley Athens R.R. Co. (1898)58 Ohio St. 123, paragraph two of the syllabus.
In the present case, the Holloways entered into the land contract and assignment agreement in their representative capacities as partners in HH Auto Parts. We find our opinion inOda v. Davis (1992), 81 Ohio App.3d 555, instructive on the issue of whether partners may bring suit in their individual capacities on a debt owed to the partnership. There, a partnership had leased a commercial building to the appellant who later failed to pay the rent as it became due. The managing partner, in his own name, brought a forcible entry and detainer action against the appellant without any indication in the complaint that the managing partner was acting on behalf of the partnership. Although the trial court recognized that the premises were owned by the partnership, it nevertheless rendered judgment in favor of the managing partner in the amount of $1,050.00 plus interest and costs. We reversed, stating in part as follows:
 There seems to be confusion in Ohio as to whether a partnership is a legal entity distinct from the persons or members who comprise it. See 13 Ohio Jurisprudence 3d (1979), 46-47, Business Relationships, Section 929. However, partnerships have been given statutory authority to sue or be sued in their own name. R.C. 2307.24. Thus, it is clear that [the partnership] could have been made a plaintiff in this action.
* * *
 It is especially troubling that [the managing partner] has recovered a judgment against [the appellant] in [the managing partner's] own name. There is nothing in the judgment entry to reflect that it represents an obligation payable to the partnership. * * * [S]hould the partnership bring an action against [the appellant], it would not be bound directly by the action in which it was not a party.
* * *
 The requirement in Civ.R. 17(A) that an action be prosecuted in the name of the real party in interest is intended to avoid exactly these kinds of problems. When an action is prosecuted in the name of the real party in interest, and that party is awarded judgment, the party against whom the judgment is awarded is protected from the possibility of multiple judgments against him.
 Although the second sentence in Civ.R. 17(A) permits a person acting in a representative capacity to bring suit "in his name as such representative," this is not what [the managing partner] has done; there is nothing in either the pleadings or the judgment entry to reflect that [the managing partner] is acting in a representative capacity. It may be that [the managing partner] need not prove his authority to act in a representative capacity on behalf of the partnership, but the pleadings and judgment must still reflect that he is acting in that capacity, rather than in his individual capacity. To hold otherwise would require persons relying upon the judgment to look beyond the face of the judgment to determine in whose favor the judgment has been rendered. This places an unacceptable burden upon the full faith and credit that must be accorded to judgments under the federal Constitution.
 We conclude that although [the managing partner] clearly had the authority to bring this action on behalf of [the partnership under the terms of the partnership agreement], he was required to do so in [the partnership's] name, not in his own name, or at least indicate on the face of the pleadings and judgment that he was acting in a representative capacity on behalf of the partnership.
 Oda, supra at 559-60.
In the present case, as in Oda, the Holloways' complaint does not reflect that they were acting in their representative capacities when filing the lawsuit, nor does the trial court's decision and entry recognize that the Holloways were so acting, although mention is made that the land contract was entered into by HH Auto Parts. Therefore, the concerns we expressed in Oda
relating to a party's protection from the possibility of multiple judgments and the ability of the parties and others to know in whose favor a judgment has been rendered are equally applicable here.
In their brief, the Holloways attempt to cast off their responsibility to prosecute their claim against Wilson in the name of the real party in interest by suggesting that (1) it was instead Wilson's responsibility to request joinder of HH Auto Parts pursuant to Civ.R. 19, and (2) Wilson has waived the real-party-in-interest issue by failing to raise it in a timely manner. We reject both notions. It is not a defendant's place to do for a plaintiff what a plaintiff refuses to do for himself. In his answer, Wilson asserted the defense that the Holloways were not, in their individual capacities, the real parties in interest. At trial, the land contract and the assignment agreement were entered into evidence. The Holloways signed both documents in their capacities as representatives of their partnership, and both documents named HH Auto Parts as the vendor of the land contract. Moreover, in his post-trial brief to the trial court, Wilson included an argument addressing the real-party-in-interest issue.
We conclude that the suit the Holloways filed in their individual capacities against Wilson suffered from a fatal defect, to wit, it was not prosecuted by the real party in interest. In addition, Wilson asserted the defense in a timely manner, pursued it at trial, argued it in his post-trial brief, and now advances as error the trial court's judgment in the Holloways' favor. The trial court's award of monetary damages to individuals who are not the real parties in interest can only be termed "arbitrary, unreasonable, or unconscionable," and we consequently sustain Wilson's fourth assignment of error. See Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
We will address Wilson's second and third assignments of error together; they are set forth as follows:
 The lower court erred in determining that any delinquent amount was due on the land installment contract between the Appellant and Appellees as of September 3, 1996.
 The lower court erred in concluding that there was a delinquent balance due on the land contract agreement in the amount of $6,994.98 as of September 3, 1996.
In his second assignment of error, Wilson claims that he was not in default on the land contract on the date the Holloways initiated their lawsuit against him and that any default relating to the July 1996 payment was cured when the Holloways accepted payment for that month on September 3. In his third assignment of error, he challenges the trial court's computation of the alleged delinquency. We conclude that Wilson was never in default under the terms of the land contract and that the trial court erred in determining there was a delinquency on the contract as of September 3, 1996.
It is recalled that the contract included a provision allowing a sixty-day grace period within which the vendee could make a late payment before default would occur. The record reflects that Wilson's attorney placed a check for the July 1, 1996, payment in the mail on August 29, that the envelope in which it was mailed was postmarked August 30, and that the Holloways received and applied the payment to the account on September 3. These facts were not in dispute at trial.
At trial, the Holloways attorney questioned Wilson as to the number of days the payment was late, and Wilson agreed with the attorney's calculations that the payment was sixty-one days late. The attorney, however, erroneously included the due date of the payment in his computation, counting the payment as thirty-one days past due by the end of July and thirty additional days past due by the time the payment was postmarked. By correctly counting July 2 as the first day of the delinquency, it is apparent that Wilson's July payment was only sixty days late, not sixty-one, and was within the grace period provided for in the land contract. Consequently, no default occurred under the terms of the contract.The Holloways assert that Wilson was obligated to pay not only the monthly installment due on July 1, but any additional interest that had accrued as a result of the lateness of the payment and the corresponding escalation in the interest rate from ten percent to thirteen percent. By Wilson's failure to do so, the Holloways claim that the contract was in default for the amount of the additional interest. Neither the land contract nor the assignment agreement contain any language that would support the Holloways' contention, however, and and we note that the Holloways handling of late payments prior to July 1996 contradicts their current position.
Accordingly, the trial court's determination that Wilson was in default in the amount of $6,994.98 is erroneous. Aside from the fact that no default had occurred, the trial court improperly compared the actual account balance on September 3, 1996, to an amortization schedule that, by its heading was shown to be an "approximate payment schedule" and which was never referred to or incorporated into either the land contract or the assignment agreement.
For the foregoing reasons, Wilson's second and third assignments of error are sustained.
Wilson sets forth his first assignment of error as follows:
 [The] lower court erred in granting personal judgment against Appellant in any amount.
Although the Holloways argued against Wilson's contention in his first assignment of error in their brief, at oral argument they conceded that judgment against Wilson personally was improper. For that reason, Wilson's first assignment of error is sustained.
B. Cross Assignment of Error
The Holloways have advanced argument on a "Fifth Assignment of Error" in their brief which, in light of their notice of appeal filed after Wilson's, we will construe as a cross assignment of error. It is set forth as follows:
 When a land contract specifically provides that the vendee is obligated to pay various expenses in the event a foreclosure action is initiated, the failure by the lower court to award those expenses as damage upon the presentation of evidence thereof is in error.
Our resolution of Wilson's four assignments of error have rendered the Holloways' cross assignment of error moot, and we consequently decline to address the issue therein.
We have found each of Wilson's four assignments of error to be well taken, and the Holloways' cross assignment of error moot. Accordingly, the judgment of the trial court is reversed and vacated.
 ________________________________ FREDERICK N. YOUNG, J.
BROGAN, J. and WOLFF, J., concur.